Argued November 21; affirmed December 10, 1935

# CLINE *v.* BUSH ET AL.

(52 P. (2d) 652)

*David B. Evans*, of Eugene (Immel & Evans, of Eugene, on the brief), for appellant.

*William W. Harcombe*, of Eugene, for respondents.

CAMPBELL, C. J. This is an action for damages for personal injuries alleged to have been sustained by plaintiff by reason of the negligent acts of defendant. The cause was tried to a jury which returned a verdict for defendant. Plaintiff appeals.

On October 26, 1934, plaintiff, a man upwards of 70 years of age, was walking in the pedestrian lane northerly across Thirteenth Avenue at its intersection with Charleton street in the city of Eugene, Oregon. The defendant at the same time was driving a model "T" Ford car easterly on said street. Plaintiff alleges in effect that defendant was negligent in the following: (1) In driving at a dangerous rate of speed;

(2) that she failed to give plaintiff the right of way; (3) that she failed to slacken her speed or do anything to avoid striking plaintiff with her car; (4) that she operated her car with an utter disregard for the rights of plaintiff; (5) that she did not have her car under control.

Defendant denied all the alleged acts of negligence and as an affirmative defense alleged that plaintiff's negligence was the proximate cause of whatever injury he sustained by reason of the collision with her car at the time and place alleged in the complaint. She alleges in effect that plaintiff was negligent as follows: (1) That he failed to look out for her car or any car and by placing himself in the path of her car so quickly that she had no time to stop; (2) that he started across said intersection as defendant was approaching and when he passed beyond the path of travel of defendant, leaving plenty of room for her to safely drive between him and the curb of the street which he had just left, he suddenly turned and reversed his course and placed himself immediately in the pathway of defendant's car and so close that she had no time to stop or change her course before colliding with him, although she was proceeding at a very low and safe rate of speed; (3) that he was negligent in turning and reversing his direction without warning to her.

The new matter was denied in the reply.

Plaintiff took exceptions to certain instructions given by the court to the jury.

After judgment was entered, plaintiff filed a motion for a new trial on the grounds of: (1) Insufficiency of the evidence to justify the verdict; and (2) errors of law occurring at the trial and excepted to by plaintiff. This motion was afterwards amended by leave of the court

and the further ground of newly discovered evidence was added.

■ In instructing the jury, the court advised them that:

"The defendant * * * has introduced some evidence which she claims tends to show that she did in fact yield the right of way to plaintiff. Now then she has introduced testimony which she claims tends to show that upon her approach to the crossing, plaintiff started to cross Thirteenth Avenue and had proceeded some distance from the south curb line of Thirteenth Avenue and she claims that there was ample room for her to pass between the south curb of Thirteenth Avenue and the position of plaintiff on the crossing, and she claims that if the plaintiff had proceeded in the course which he had undertaken, that there would have been no collision. Of course this is a question of fact for the jury to decide, but that is her claim."

When the defendant went on the stand, in speaking of the plaintiff crossing the street, she testified:

"He walked a little ways. I looked at the man all the time, and I never seen him look up for nothing, neither up the street nor down the street, and I knew he was an old man and I went slow, and almost come to a stop because I had my car in low, and the man walked fast and all of a sudden he turned and faced the car. Naturally that confused me, I put on the brakes and just straight in front of me he hit the radiator face to me, and I stopped as quick as I could. I don't suppose I went over two or three feet. I was going in low and I put my foot on the brake and when I stopped the car he fell down and rolled over in the street, and I jumped right out of the car and went over to see him and another man came along, that man that was testifying a while ago was behind the car and he stopped behind me.

* * * * *

Q. Now, when you saw Mr. Cline as he stepped off the curb did you watch him from that time on until the time of the collision?

A. I most certainly did, every minute.

Q. Well, you say he turned?

A. Well, I don't know—he kept going and I naturally think he keeps going and all of a sudden he turned, like that. (Indicating) And turned about quickly and he just faced me.

Q. How far had he got across the street before he turned?

A. Well, he had got far enough past so he was past the car. He was by where I was with the car.

Q. He was completely beyond the car?

A. Yes, he was completely beyond the car, and I often wondered if he saw the car or hear it but he didn't look up the street or down the street. He was mistaken in that because I watched him.''

There was considerable more testimony to the same effect.

This testimony justifies this instruction that the learned court gave.

■ A party litigant is entitled to have the court instruct on his theory of the case if there is any competent evidence to support it: *Manning v. Helbock,* 135 Or. 262 (295 P. 207).

The court further instructed the jury:

''* * * if you find from the evidence of the case that there was ample room between the south curb of Thirteenth Avenue and position in the crossing in which the plaintiff was at the time of the accident for the defendant to have driven her car through and if she attempted to do so, and if you further find from the evidence in the case that plaintiff suddenly reversed his course and started back, then under those circumstances the defendant Angela Bush was required to exercise ordinary care and caution to prevent colliding with the—or striking the plaintiff, and if such fact took place, and if that is what happened, and it is for you to say, if the defendant did exercise reasonable care to prevent colliding with the person of the plaintiff then she would not be liable, but if you find that

she failed to exercise reasonable care and if she is guilty of negligence in any of the particulars alleged in the complaint, and if such negligence, if there was negligence, was the proximate cause of the accident, and if the plaintiff was free from contributory negligence then the defendant would be liable.

"The driver of any vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked cross-walk or unmarked cross-walk at the end of the block." Oregon Laws 1931, § 38a, Chapter 360; § 55-2314, Oregon Code 1935 Supp.; *Siskel v. Calhoun,* 147 Or. 606 (34 P. (2d) 659).

■ The pedestrian, in exercising his right of way at street intersections, must use ordinary care or such care as a reasonably prudent person would use under similar circumstances and conditions commensurate with the danger to be apprehended. The driver of a car at such a crossing must do the same. If the pedestrian stops or reverses his course and places himself in a position of peril in such close proximity to the driver's car so the driver would not have time to stop, or change his course, to avoid a collision, the driver would not be liable in the absence of other negligence on his part. In the instant case, it was a question for the jury to determine, and there was no error in giving the foregoing instruction. The court was careful to caution the jury that it was a question of fact for them to determine: *Emmons v. Skaggs,* 138 Or. 70 (4 P. (2d) 1115), and the cases cited therein.

This assignment of error is based upon the failure of the court to give the following instruction:

"A person driving an automobile is driving a machine capable of doing great damage if not handled in a careful prudent manner, therefore, it takes more care on the part of a driver of an automobile to amount to reasonable care in the situation than is required of a pedestrian walking across the highway. While the

same degree of care is imposed on both the automobile driver and the pedestrian, the amount of care may be different for it may be said the autoist is bound to exercise a greater amount of care than the pedestrian by reason of the dangerous instrumentality under her control.''

■ This instruction is copied almost *verbatim* from an instruction given in *Krieger v. Doolittle,* 142 Or. 122 (18 P. (2d) 1041). It will be observed that this court did not unqualifiedly approve this instruction. It was held not to be error properly excepted to, because an exception was taken to the whole instruction and part of it was undoubtedly correct. The instruction is couched in terms that may be misleading and contains what appears to be an inconsistency. In one sentence it says: ''It takes more care on the part of the driver of an automobile to amount to reasonable care in the situation than is required of a pedestrian walking across the highway.'' The next sentence says: ''While the same degree of care is imposed on both the automobile driver and the pedestrian, the amount of care may be different for it may be said the autoist is bound to exercise a greater amount of care than the pedestrian.''

The amount of care required by both the pedestrian and the driver is such care as an ordinary careful prudent person would exercise under similar conditions and circumstances, and commensurate with the danger to be apprehended. The court fully instructed the jury in the instant case as to the care required by the plaintiff as well as by the defendant.

Appellant lays great stress, and bases this assignment of error, on the refusal of the court to grant a new trial on the ground of newly discovered evidence.

The newly discovered evidence consists of a statement made by a party who had a conversation with de-

fendant shortly after the accident occurred. The affidavit recites:

"On the morning of October 6th, she was to make the daily milk delivery and also deliver to me one sack of potatoes. She was very late on this morning and when she arrived I made some objection to the delay. She came into my house and sat down, and in answer to my inquiry as to the reason for the delay she stated to me, 'I just bumped an old fool up the street, who was jay walking,' to which I replied, 'Why on earth don't you get those brakes fixed. I told you you would have an accident if you kept on driving that car without any brakes.' To this she replied, 'I know it but my old man is just too tight. Maybe he will do it now.'"

██ Generally speaking, the power to grant a new trial is within the sound discretion of the trial court and its ruling will not be disturbed on appeal except for an abuse of that descretion: *Goldfoot v. Lofgren,* 135 Or. 533 (296 P. 843), and cases cited therein. If the statement in the affidavit be correct, it would show only another reason for recovery and one not alleged in the complaint. In plaintiff's complaint, there is no charge of negligence on the ground of defective brakes on the automobile defendant was driving, nor is there any evidence of any defect in the automobile. If the newly discovered evidence were offered, it would not be admissible without an amendment in the complaint. It was probably not very nice for the defendant to refer to plaintiff's mental incapacity in the language she used, yet she would not be liable for damages in a personal injury case for using such language. As already stated, there is nothing in the complaint to which the evidence regarding defective brakes would be applicable.

The judgment of the lower court will be affirmed. It is so ordered.

BEAN, BAILEY and RAND, JJ., concur.